

# IN THE 7TH JUDICIAL CIRCUIT COURT, CLAY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>SHANE TERRIL ALEXANDER | **Case Number: 19CY-CV11620** |
| Plaintiff/Petitioner:<br>JETZ SERVICE CO. INC.<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>GEORGE EDWARD KAPKE Jr.<br>3304 NORTHEAST<br>RALPH POWELL ROAD<br>LEE SUMMIT, MO 64064 |
| Defendant/Respondent:<br>MIDWEST BAPTIST THEOLOGICAL<br>SEMINARY INC | Court Address:<br>11 S WATER<br>LIBERTY, MO 64068 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** MIDWEST BAPTIST THEOLOGICAL SEMINARY INC
Alias:

AGENT: DR. JASON K. ALLEN
5001 N. OAK TRAFFICWAY
KANSAS CITY, MO 64118

**COURT SEAL OF**

**CLAY COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_____11/25/2019_____          _____Jackson_____  Clerk
Date

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
                              Date                                    Notary Public

| Sheriff's Fees | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 | |
| Mileage | $_____ | (_____ miles @ $_____ per mile) |
| Total | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (SMCC) *For Court Use Only:* **Document Id # 19-SMCC-1523**          1 of 1          Civil Procedure Form No. 1, Rules 54.01 – 54.05,
CLAY (2-11)(SMCCCY)                                                                                          54.13, and 54.20, 506.120 – 506.140, and 506.150 RSMo

IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI
AT LIBERTY

| | | |
|---|---|---|
| JETZ SERVICE CO. INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| MIDWEST BAPTIST THEOLOGICAL | ) | |
| SEMINARY | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Plaintiff's Motion for Appointment of Private Process Server is
sustained and the below named individuals are hereby appointed to serve Plaintiff's Petition upon
Defendant, Midwest Baptist Theological Seminary in the above-captioned matter.

| Legal Name | Registration No. | Legal Name | Registration No. |
|---|---|---|---|
| Rufus Harmon | PPS19-0235 | Edward McPheeters | PPS19-0349 |
| Robert Rowland | PPS19-0526 | Richard Carter III | PPS19-0516 |
| Gary Weaver | PPS19-0656 | Robert Anderson | PPS19-0307 |
| Brent Kirkhart | PPS19-0246 | Ryan Weekley | PPS19-0294 |
| Janice Kirkhart | PPS19-0247 | | |

NOVEMBER 25, 2019

_____

DATE

~~XXXXXXXXXX~~  CLERK

COURT SEAL OF



CLAY COUNTY

## IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI
## AT LIBERTY

| | |
|---|---|
| **JETZ SERVICE CO. INC.** ) | |
| 3737 NE Great Midwest Drive ) | |
| Kansas City, MO 64161 ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | Division: |
| ) | |
| **MIDWEST BAPTIST THEOLOGICAL** ) | |
| **SEMINARY** ) | |
| **SERVE MANAGING OR GENERAL** ) | |
| **AGENT:** ) | |
| **Dr. Jason K. Allen** ) | |
| **5001 North Oak Trafficway** ) | |
| **Kansas City, Missouri 64118** ) | |
| Defendant. ) | |

### PETITION

COMES NOW the Plaintiff, Jetz Service Co. Inc., and for its Petition against Defendant Midwest Baptist Theological Seminary and states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Jetz Service Co. Inc., (hereinafter "Plaintiff") is a Kansas Corporation that is authorized to do business in the State of Missouri.

2.    Midwest Baptist Theological Seminary (hereinafter "Defendant") is the sixth seminary established by the Southern Baptist Convention.  Upon information and belief, the Defendant is an unincorporated association or entity and may be served through its managing agent or general agent Dr. Jason K. Allen.

3.    Pursuant to the terms of the lease agreement (hereinafter the "Lease Agreement"), venue for any action arising under the lease is Clay County, Missouri.  *A true and accurate copy of the Lease Agreement is attached hereto as Exhibit A and is incorporated herein by reference.*

4.     Venue is appropriate in Clay County Missouri in accordance with the Lease Agreement. See Ex. A., ¶ 12.

## FACTUAL ALLEGATIONS

5.     Plaintiff incorporates paragraphs 1-4 of this Petition as though fully set forth herein.

6.     On or about January 8, 2013, Plaintiff entered into the Lease Agreement with Defendant.

7.     The Lease Agreement provided an initial five year term and then became a month-to-month tenancy unless terminated in accordance with its terms.

8.     In addition to providing a lease term, the Lease Agreement granted Plaintiff a right of first refusal. It states:

> "In any event if this lease is not renewed at the expiration of the primacy or any extended term, for a period of one (1) year following the expiration of the lease term the Lessee (Plaintiff) shall have an exclusive right of first refusal to meet any bid from any other vendor to provide laundry service, or for the sale or lease of laundry equipment by Lessor or its agent, to serve the property in which the leased property is located. Lessor (Defendant) agrees to provide Lessee (Plaintiff) with a complete copy *signed* by the vendor of any lease or sales agreement to provide such laundry service which Lessor is willing to accept. Lessee (Plaintiff) shall have thirty (30) days after receipt of such signed lease or sales agreement to provide services on the same terms as such signed lease or sales agreement. Time is of the essence of this lease. Exhibit A., Para. 3.

9.     On or about May 17, 2019, Defendant provided Plaintiff with a proposed lease agreement signed by RJ Kool Company the agreement did not state an effective date but indicated it would commence in June of 2019. See Exhibit B.

10.    On May 18, 2019, Plaintiff, through its representative Kenneth Clark, accepted and agreed to match the terms proposed by RJ Kool Company.

11.    As of May 18, 2019, Plaintiff had exercised its right of first refusal.

12.     Alternatively. Defendant May 17. 2019. representation that the lease agreement submitted by RJ Kool Company was one that Defendant was willing to accept was false.

13.     After Plaintiff exercised the right of first refusal on May 18, 2019. Defendant refused to acknowledge the acceptance.

14.     On May 20, 2019. Defendant submitted a revised proposed from RJ Kool Company that reduced the term from six years to one year. See Exhibit C.

15.     On or about July 8. 2019, Defendant mailed notice cancelling the Lease Agreement. Defendant conceded in this notice that Plaintiff's right of first refusal survives the termination of the Lease Agreement. See Exhibit D.

16.     On July 9, 2019. Plaintiff sent a letter to Defendant indicating that it was not accepting termination of the Lease Agreement and further indicating that Plaintiff had lawfully exercised the right of first refusal to match the terms of a six-year lease term proposed by R.J. Kool.

17.     Upon information and belief. after Plaintiff exercised its right of first refusal. Defendant and R.J. Kool attempted to circumvent Plaintiff's exercise of the right of first refusal reducing their lease term from six years to one year.

18.     Plaintiff has fully complied with its obligations in accordance with the terms of the Lease Agreement and has validly exercised its right of first refusal.

## COUNT I – BREACH OF LEASE

19.     Plaintiff incorporates by reference paragraphs 1- 18 as though fully set forth herein.

20.     The Lease Agreement between Plaintiff and Defendant contained a right of first refusal which Defendant has violated.

21.     On May 18, 2019. Plaintiff exercised the right of first refusal by agreeing to match

the lease terms offered by RJ Kool Company.

22.     Defendant terminated the Lease Agreement with Plaintiff and refused to accept Plaintiff's tender of matching terms on the six-year lease.

23.     Thereafter. Defendant represented that it had received new terms that were reduced to one year. However, this new term was ineffective because Plaintiff had exercised its right of first refusal.

24.     Defendant has breached the right of first refusal by refusing to comply with the accepted terms and then attempting to use the accepted right of first refusal to negotiate a different agreement.

25.     Plaintiff has fully performed its obligations under the Lease Agreement or stands prepared to.

26.     Plaintiff has been damaged by Defendants breach of Lease Agreement by the amount of profits that are or could have been earned during the six-year term that Defendant refused to honor.

27.     Plaintiff has retained counsel to pursue this action. The Lease Agreement provides Plaintiff is entitled to recover its attorney's fees if it is required to enforce the lease agreement.

WHEREFORE. Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff damages, attorney's fees and pre-and post-judgment interest and for such other relief as the Court deems just and proper.

## COUNT II – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

28.     Plaintiff incorporates by reference paragraphs 1- 27 as though fully set forth herein.

29.     Missouri law imposes an obligation of good faith and fair dealing in connection with all contractual undertakings.

30.     Defendant had a duty to act with good faith when Plaintiff exercised the Right of First Refusal and agreed to match RJ Kool's proposal for a six-year lease term.

31.     Defendant violated its obligation to act in good faith by representing the six-year lease term offered by RJ Kool Company was a proposed that Defendant was "willing to accept" and then, after Plaintiff exercised its right of first refusal, negotiating a shortened lease term that was intended to invalidate or limit the applicability of Plaintiff's right of first refusal.

32.     As a result of Defendant's breach of the duty of good faith and fair dealing, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff damages, attorney's fees and pre-and post-judgment interest and for such other relief as the Court deems just and proper.

## COUNT III – FRAUD

33.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-32 of this Petition as though fully set forth herein.

34.     Defendant represented to Plaintiff that it was "willing to accept" the six-year lease with RJ Kool, Inc.

35.     Defendant's representation was false.

36.     This representation was material because the right of first refusal was only implicated if the proposal received by Defendant was one that the Defendant was willing to accept.

37.     Defendant was aware that its representation was false when it made the representation to Plaintiff or Defendant was ignorant as to whether representation was true or false.

38.     Defendant intended for Plaintiff to act on the representation in that Defendant sought to obtain Plaintiff's approval in an effort to negotiate a more favorable term with RJ Kool

Company.

39.     Plaintiff relied on the representation of Defendant by agreeing to match the terms offered by RJ Kool Company.

40.     Plaintiff had every right to rely on the representation of Defendant that it was, indeed, willing to accept the 6 year lease term with RJ Cool Company and Plaintiff had no way of knowing that Defendant was making a false representation for the purpose of inducing Plaintiff to exercise the right of first refusal so that Defendant could, thereafter, negotiate an even better deal with RJ Kool Company.

41.     Plaintiff has been damaged by Defendant's actions.

42.     Defendant's actions in making a false and misleading representations regarding the lease agreement it was willing to accept with RJ Kool Company, were done with evil motive and reckless indifference for the right of the Plaintiff warranting an award of punitive damages.

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant and award Plaintiff damages, punitive damages, attorney's fees and pre-and post-judgment interest and for such other relief as the Court deems just and proper.

### PLAINTIFF REQUESTS A JURY TRIAL ON ALL MATTERS ALLEGED HEREIN

**KAPKE & WILLERTH L.L.C.**

By: *George E. Kapke Jr.*
George E. Kapke, Jr.   MO #52114
The Chapel Ridge Law Building
3304 N.E. Ralph Powell Road
Lee's Summit, Missouri 64064
Telephone: 816-461-3800
Facsimile: 816-254-8014
ted@kapkewillerth.com

**ATTORNEY FOR PLAINTIFF**



# 19CY-CV11620



**Laundry Matters.**

3737 NE Great Midwest Drive
Kansas City, MO 64161
LOCAL (816) 454-9274
FAX (816) 454-9137
TOLL FREE (800) 530-5726

E-mail: info@jetzservice.com
Jetz Online: http://www.jetzservice.com

## LEASE

THIS LEASE AGREEMENT is entered into this 8th day of January 2013, by and between Midwestern Baptist Seminary, (hereinafter referred to as "LESSOR"), and JETZ SERVICE CO., INC. (hereinafter referred to as "LESSEE"). Lessor by these premises does lease to Lessee, and Lessee does hereby accept the exclusive possession of the room or rooms, described below and located on the real property and improvement of 96 units located at 5001 N. Oak Trafficway, Kansas City, MO 64118. Lessor shall not reduce the number of living units on the real property without the written consent of Lessee. Lessor warrants and represents that only zero units are plumbed with their own washer or dryer connections.

**1. Representation of Owner or Agent.** Lessor does hereby warrant and represent that it is the owner of the property, or the authorized agent thereof, acting with full authority to enter into this agreement. The undersigned represents and warrants that Lessor has full legal authority and ability to be bound by all provisions of this agreement, and will be so bound upon his/her signature.

**2. Exclusive Use and Possession of Leased Premises.** Lessor hereby leases to the Lessee and Lessee hereby rents the following from the Lessor.

A. Approximately 900 square feet of usable area on the lower floor(s) of campus building(s) located upon the real property described on Exhibit A, attached hereto and made a part hereof, which is commonly known as the Midwestern Baptist Seminary at the following street address:

  5001, 5125, 5127, 5133, 5135, 5107, 5105, 5101, 5137, 5139, 5141 and 5143 N. Oak Trafficway
  Kansas City, MO 64118

B. The site plan showing the location of the area leased by Lessor to Lessee as a laundry facility is set forth on Exhibit B attached hereto and made part hereof.

C. This lease includes the exclusive use and possession of the laundry facility, together with free ingress and egress thereto for Lessee and its customers twenty-four (24) hours a day, seven (7) days a week.

**3. Term.** The primary term of this lease shall be for 5 year(s) from the date of final execution of this lease agreement. This lease shall be automatically renewed on a month to month basis unless cancelled by either party by written notice to the other by certified mail to the appropriate address specified herein received at least thirty (30) days prior to the expiration of the then existing term. If for any period of more than thirty (30) consecutive days during the term of this lease, Lessee shall be deprived of use of the laundry room(s) through no fault on its part, then the term of this lease shall be extended for a like period of time, without further consideration or action on the part of the Lessee. In any event if this lease is not renewed at the expiration of the primary or any extended term, for a period of one (1) year following the expiration of the lease term the Lessee shall have an exclusive right of first refusal to meet any bid from any other vendor to provide laundry service, or for the sale or lease of laundry equipment by Lessor or its agent, to serve the property in which the leased property is located. Lessor agrees to provide Lessee with a complete copy signed by the vendor of any lease or sales agreement to provide such laundry service which Lessor is willing to accept. Lessee shall have thirty (30) days after receipt of such signed lease or sales agreement to agree to provide services on the same terms as such signed lease or sales agreement. Time is of the essence of this lease.

**4. Rent.** Lessee shall retain the first $760.00 (base amount) per month of the gross receipts collected and Lessee will pay 95% of all remaining receipts in excess. The balance to be paid to Lessor as rent, after deduction from such rent of any taxes attributable to the laundry operations or income at the leased premises such as gross receipts, sales, use or other such tax, cost of smart cards, credit card fees, refunds on corrupted cards, and customer refunds. Lessee shall permit Lessor to have a representative present when collections are made from machines, provided Lessor notifies Lessee in writing of such request. The base amount will be adjusted in February of each year, in proportion to the change in the Consumer Price Index (CPI-W (All items –1982-84 =100)) each year of the term. Lessee shall determine pricing for machine usage, *any future price changes will not be necessarily* ~~authorized~~ Lessor *approved by* ~~RH~~

**5. Equipment.** Lessee will be permitted to place personal property and equipment in the leased premises, and the title to such property shall remain at all times that of the Lessee, and at the conclusion of the term of this lease, or any renewal thereof. Lessee will be permitted to remove such personal property and equipment which is remaining on the leased premises.

**6. Insurance.** Lessee on its own behalf shall maintain throughout the term of this Agreement general liability insurance covering the described leased premises for bodily injury and property damage in a combined primary and excess amount of not less than $2,000,000 for each occurrence with a $2,000,000 annual aggregate. Lessee further agrees to hold the Lessor harmless for claims of liability caused by any negligent act of the Lessee on the leased premises. Lessee does not assume responsibility for any injury, loss or damage caused by equipment tampering, vandalism, acts of God or other occurrences beyond Lessee's control.

**7. Waiver of Subrogation.** Lessor and Lessee mutually waive any and every claim which arises or may arise in its favor and against the other during the term of this lease for any and all loss or damage to real or personal property which is covered by valid and collectible property insurance policies, to the extent that this waiver loss or damage is recoverable under said insurance policies. Lessor and Lessee agree to provide notice of such to each insurance company issuing any policies on property subject to this agreement so as to prevent the invalidation of such insurance by reason of this waiver.

EXHIBIT
A

**8. Utilities and Maintenance.** Lessor does hereby agree that it will provide all utility and venting service necessary for proper operation and maintenance of the laundry equipment which the Lessee deems fit to place within the leased premises; that the Lessee hereby grants to Lessor, as part of said lease, the right to come on to the premises to perform all necessary janitorial and maintenance services for the leased premises, including but not limited to maintaining the leased premises in good repair and cleanliness. If Lessee's laundry services are interrupted for any reason other than Lessee's negligence, Lessee may extend the term of the Lease for a period of time equal to the period of such interruption, by written notice thereof to Lessor. The Lessee shall not be responsible for property damage or personal injury due to lack of or inadequacy of a floor drain in the leased premises.

**9. Home Office Approval.** This lease, and any modification and/or addendum(s) to this lease, shall require written approval of Lessee's Home Office before becoming effective, and shall immediately become effective upon such approval, with or without notification to Lessor.

**10. Non-Competition Clause.** Lessor agrees that during the life of this lease, Lessor shall not furnish, provide, lease, rent or in any manner cause to be installed or enter into any agreement with anyone other than Lessee to furnish, provide, lease, rent or in any manner cause to be installed washers and/or dryers in any of the rental units or any other location except as permitted by paragraph 2 of this agreement at the <u>Midwestern Baptist Seminary,</u> without the express written consent of Lessee. The provisions of this paragraph shall be binding upon and inure to the benefit of the heirs, administrators, successors and assigns of Lessor. If Lessor violates this provision Lessee shall be entitled to recover from Lessor any decorating allowance paid or payable to Lessor hereunder in addition to actual damages sustained by Lessee.

**11. Laundry Maintenance.** During the term of this lease, Lessor shall provide to Lessee all utilities including hot and cold water systems, water softener and maintain all other systems within the leased premises, keeping them in good repair and in a neat and orderly condition, free of litter or dirt so as to be attractive to Lessor's tenants and Lessee's customers. In the event Lessor shall fail to provide such services, Lessee may but shall not be obligated to provide the same and in the event Lessee provides such services it may deduct any and all necessary costs or expenses associated therewith from sums due Lessor hereunder.

**12. Lease and Not a License.** This lease shall be construed in all respects as a lease and not a license and the parties agree that their relationship is that of landlord and tenant under the laws of the State of <u>Missouri.</u> Venue for any legal proceedings shall be in <u>Clay</u> County, <u>Missouri.</u> This lease or a memorandum thereof may be recorded at Lessee's expense in the Land Records of the jurisdiction where the lease premises are located.

**13. All Locations.** Both parties to this agreement agree that this Lease will apply to all locations and addresses generally associated with this project.

**14. Attorney Fees.** In addition to any other remedy Lessee may have under this Lease, if Lessee incurs any expense, including reasonable attorneys fees, by reason of the default or breach of this Lease by Lessor, Lessee shall be entitled to recover such expense.

**15. Notices.** Neither party shall declare a default of this Lease prior to giving the other party notice specifying the default and giving the other party not less than ten (10) business days from receipt of the notice in which to cure the default. All notices permitted or required by this Lease shall be in writing and sent postage prepaid by certified mail or by a recognized overnight courier service which provides evidence of delivery.

**16. Covenants Running with the Property.** The provisions of this agreement shall be covenants running with the ownership of the real property described on Exhibit A and shall be binding upon and inure to the benefit of the respective parties hereto and their respective heirs, executors, administrators, successors, or assigns including, without limitation, any person or entity who shall obtain ownership of the real property by assignment, contract for sale, warranty deed, quit claim deed, or by operation of law through a judicial foreclosure or bankruptcy sale. Failure of the Lessor to secure said assignment shall, at Lessee's option, constitute a breach of the Lease and shall not serve to relieve Lessor or the purchaser or transferee of any of the obligations under the Lease which shall continue for the remainder of the Term.

**17. Entire Agreement.** This agreement contains the entire agreement of the parties. There are no representations, warranties, or agreements other than those expressly set forth herein. No other agreement, representations or warranty and no modification or waiver thereof shall be binding unless reduced to writing and signed by both parties.

**18. Decorating Allowance.** Lessee agrees to pay $5,700.00 as a onetime Decorating Allowance payable approximately thirty (30) days after the date of final execution of this lease agreement and receipt by Lessee of an affidavit of solvency executed by Lessor's owner, chief executive or chief financial officer. If for any reason, Lessee is prevented from enjoying the benefits of this Lease for the full primary term, then Lessee shall be entitled to a refund of the entire Decorating Allowance in addition to, and not in lieu of, any other remedies.

THIS LEASE AGREEMENT shall replace and supersede a similar agreement between Midwestern Baptist Seminary and Jetz Service Co., INC. dated May 1st, 2007.

This Lease may be executed in counterparts and by electronically transmitted signatures of the parties. Each counterpart with electronically transmitted signatures shall be considered and original.

LESSEE: JETZ SERVICE CO., INC.     LESSOR: Midwestern Baptist Seminary

BY: _____ 8/20/13   BY: _____

BY: _____            _____
Approved by Home Office             Title of Authorized Agent
                                    Vice President of Administration

                                    PAY RENT TO: Midwestern Baptist Seminary
Lessee's Mailing Address                         5001 N. Oak Trafficway
JETZ SERVICE CO., INC.                           Kansas City, MO 64118
3737 NE Great Midwest Dr
Kansas City, MO 64161

Date: July 31, 2015

## ADDENDUM #1

This Addendum to the Lease Agreement forms a part of the original lease between Jetz Service Co., Inc. (Lessee) and Midwestern Baptist Seminary (Lessor) dated January 8th, 2013. The parties agree to the below changes due to Lessor's request that Lessee install additional laundry equipment consisting of five (5) reconditioned top load washers and five (5) reconditioned electric floor model dryers in the Fusion Building.

The original Item #4 is deleted in its entirety and replaced with the below:

4. Rent. Lessee shall retain the first $980.16 per month (base amount) of the gross receipts collected and Lessee will pay 95% of all remaining receipts in excess during the term of this lease. The balance to be paid to Lessor as rent, after deduction from such rent of any taxes attributable to the laundry operations or income at the leased premises such as gross receipts, sales, use or other such tax, cost of smart cards, credit card fees, refunds on corrupted cards, customer refunds and costs of repairs or replacement of equipment due to damage caused by any party other than the Lessee or an act of God. Lessee shall permit Lessor to have a representative present when collections are made from machines, provided Lessor notifies Lessee in writing of such request. The base amount will be adjusted in February of each year, in proportion to the change in the Consumer Price Index {CPI-W (All items –1982-84 =100)} each year of the term. Lessee shall determine pricing for machine usage.

Except as expressly set forth in this Addendum, all other terms and conditions of the Lease dated the 8th, day of January, 2013 shall remain in full force and effect and are hereby confirmed and acknowledged.

Facsimile and electronic mail signatures will be deemed original signatures, and this document may be signed in counterpart.

LESSEE: JETZ SERVICE CO., INC.

BY: _____

APPROVED BY HOME OFFICE

BY: _____

LESSOR: Midwestern Baptist Seminary

BY: _____ 8/5/2015

Director of Campus Operations
Title of Authorized Agent

# TOPEKA
Date: 8-6-15
Location ID: 44707



## STANDARD LAUNDRY EQUIPMENT RENTAL AGREEMENT

**LESSOR:**
RJ Kool Company
234 W 12th Avenue
North Kansas City, MO 64116
(800) 345-4551

**LESSEE: (Customer)**
Midwestern Baptist Theological Seminary
5001 North Oak Trafficway
Kansas City, MO 64118

**REPRESENTATION OF OWNER OR AGENT.** Lessee warrants and represents that (i) it is the owner of the Property or (ii) that Lessee is the authorized agent of the owner, has the power and authority to enter into this Rental on behalf of the owner, and to bind the owner to this Rental.

**EQUIPMENT.** Title to all laundry equipment, fixtures, wiring, plumbing, ducts, accessories, and other personal property supplied or installed by Lessor in or on the Property (the "Equipment") shall remain in the name of Lessor. Lessee shall not encumber the Equipment at any time. Lessee shall not remove, move, disconnect, or tamper with the Equipment, except upon receipt of written permission from Lessor or as necessary to perform janitorial services or maintenance to the Premises. Upon the expiration or termination of this Lease, Lessee shall allow Lessor to have full access to the Premises to remove the Equipment.

**CONDITION OF LESSEE'S PREMISES.** Lessee shall keep the Premises in a safe and clean condition, and in good order and repair. Lessee shall provide, at Lessee's expense, all water, electricity, gas, sewer, and ventilation to the Premises, and any other utility or service necessary for the installation and operation of the Equipment. Lessor shall not be responsible for damage to the Property caused by the lack or inadequacy of a floor drain in the Premises. Lessee agrees to promptly notify Lessor if any of the Equipment malfunctions or needs repairs. Lessee is responsible for vandalism and/or theft of laundry equipment and/or VTM device, and the costs necessary to repair or replace the rental equipment.

**LESSOR'S OBLIGATIONS.** Lessor will maintain the Equipment in good operating condition during the term of this Rental. Lessor has the right to terminate this Rental Agreement at any time due to excessive service calls on Lessor's rented equipment. Lessor will conduct a service call within 3 business days of request. *Should Lessor fail to response within 3 business days the Lessee has the right to deduct from payment the prorated daily fee of the unit(s) affected until service call has been completed.*

**PAYMENTS.** Lessee shall pay to Lessor the amount listed below on or before the first of the month. Payment shall be made by either credit card or ACH. If Lessee fails to make any payment within seven days of the due date, Lessee shall also pay to Lessor a late charge in the amount of fifty dollars. Payments later than seven days shall also bear interest at the rate of eighteen percent per annum or the highest rate allowed by law, whichever is greater. Payment amount is twenty dollars each per washer and dryer, and forty dollars per VTM device plus appropriate sales tax. Lessee reserves the right to adjust the rental rate by an amount not to exceed six percent (6%) at the beginning of each calendar year during the lease term and any renewals thereof.

**TERM.** At the expiration of the initial Rental term, this Rental shall be automatically renewed for additional ninety day terms, unless either party gives notice of its intent to terminate this Rental at least sixty (60) days prior to the expiration date of the initial term of this Rental or any renewals. Time is of the essence for the notice of intent to terminate this Rental. At the end of the Rental, Lessee will be allowed to purchase the laundry equipment, at a fair market value as determined by Lessor; provided, however, Lessee shall give written notice to Lessor of its intent to purchase no later than sixty (60) days prior to the end of the lease term.

**SUCCESSORS.** This Rental shall inure to the benefit of, and be binding upon, each party's heirs, successors, and assigns.

**INSURANCE.** Lessor will provide public liability insurance in an amount not less than $1,000,000 against claims for bodily injury or property damage caused by use of the Equipment. Lessee and Lessor hereby release one another and their respective agents, officers, and employees from any and all liability (to the other or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage covered by property insurance or coverable by a customary policy of insurance, even if such loss or damage shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible.

**NOTICES.** All notices required under this Rental shall be in writing and shall be hand delivered or sent by certified mail to the mailing address of the parties specified above. Notices shall be effective upon hand delivery or shall be deemed to have been given three days after the date of such mailing. Lessor may adjust the rental amounts due from Lessee by no more than six percent (6%) per year.

**LESSOR/LESSEE OPTIONS.** If this Equipment Lease is not renewed and Lessee desires to continue making laundry equipment available to its residents by renting laundry equipment or purchasing laundry equipment, Lessee shall have the option to in good faith, seek a commercially reasonable lease, rental agreement, or purchase order for provision of laundry equipment from any third party. For a rental agreement to be "commercially reasonable" shall mean, among other things, a term of sufficient length to enable Lessee to recover any investment in equipment and other costs associated with performing its obligations under the rental agreement, plus reasonable overhead and profit. Lessee shall have the option to match the terms of any such third party offer tendered within 180 days of Lease termination as follows: Lessee shall provide Lessor with an executed copy of any such lease, rental agreement, or purchase order, and Lessor shall have thirty (30) days from the receipt of such executed copy, at its option, to notify Lessee that it will substantially match the terms of such lease, rental agreement, or purchase order in which case a new agreement shall be entered into between Lessor and Lessee on such terms.

**DEFAULT.** The occurrence of any of the following events shall be considered an event of default under this Rental: (a) Lessee's failure to make any payment required by this Rental on the due date thereof, (b) Lessee becoming insolvent or the filing of a bankruptcy petition by or against Lessee, or (c) Lessee's failure to perform any other term or condition of this Rental. In case of a default, Lessor shall provide written notice of the default to Lessee demanding same be cured. Lessee shall have ten (10) days from the date the notice was hand delivered or mailed in order to cure the default; except that Lessor shall have no obligation in this regard if the nature of the default is such that Lessee cannot cure the default. Upon the occurrence of an uncured or incurable event of default, Lessor shall have the right to exercise any one or more of the following remedies: (a) Declare the entire amount of the total unpaid payments for the balance of the initial Rental term and renewal term to be immediately due and payable, (b) without demand or legal process, enter the Property and take possession of and remove the Equipment and Lessee shall allow Lessor to have full access to the Premises to remove the Equipment, (c) terminate this Rental, and/or (d) pursue any other remedy at law or in equity, (e) replace locks and/or card readers necessary to collect machine revenues. Lessee shall be responsible for all attorney's fees and costs incurred by Lessor in enforcing or defending this Rental, whether or not litigation is actually commenced.

**MISCELLANEOUS.** This Rental shall be construed and interpreted in accordance with the laws of the State of Missouri. The venue of any action or proceeding arising out of or relating to this Rental shall be in the District Court, Clay County, Missouri. All of the provisions of this Rental are separable, so if any provision of this Rental is held to be ineffective by a court, the remaining provisions of this Rental shall remain in full force and effect unless the invalidated provision is so fundamental to this Rental that the remaining provisions do not reflect the parties' intent. Notwithstanding any other provision in this Lease, Lessor may, in its sole discretion, with or without cause, terminate this Lease on sixty days' written notice to Lessee. This Rental contains the entire agreement of the parties with respect to the subject matter of this Rental and supersedes any and all prior contracts and understandings between the parties with respect to the same. The terms of this Rental have been cooperatively negotiated by Lessee and Lessor, and this Rental shall not be construed against either party as its author. Time is of the essence for each and every term of this Rental.



EXHIBIT
B

**Rental Commencement Date:** June  , 2019

**Rental rate:** $1,150 per month.

**LESSOR:** RJ Kool Company

By:

Bill Kimmel, President

Date 5/15/19

**Expiration of Original Term:** June  , 2025

**LESSEE:** Midwestern Baptist Theological Seminary

By: _____

Name / Title _____

Date: _____

**Exhibit "A" - Description of Premises**
Various Building on the Midwestern Baptist Theology Campus

**Exhibit "B" - Description of Equipment**

23 Unimac On-Premise Top Load Washers
23 Unimac On-Premise Electric Dryers



# STANDARD LAUNDRY EQUIPMENT RENTAL AGREEMENT

**LESSOR:**
RJ Kool Company
234 W 12th Avenue
North Kansas City, MO 64116
(800) 345-4551

**LESSEE: (Customer)**
Midwestern Baptist Theological Seminary
5001 North Oak Trafficway
Kansas City, MO 64118

**REPRESENTATION OF OWNER OR AGENT.** Lessee warrants and represents that (i) it is the owner of the Property or (ii) that Lessee is the authorized agent of the owner, has the power and authority to enter into this Rental on behalf of the owner, and to bind the owner to this Rental.

**EQUIPMENT.** Title to all laundry equipment, fixtures, wiring, plumbing, ducts, accessories, and other personal property supplied or installed by Lessor in or on the Property (the "Equipment") shall remain in the name of Lessor. Lessee shall not encumber the Equipment at any time. Lessee shall not remove, move, disconnect, or tamper with the Equipment, except upon receipt of written permission from Lessor or as necessary to perform janitorial services or maintenance to the Premises. Upon the expiration or termination of this Lease, Lessee shall allow Lessor to have full access to the Premises to remove the Equipment.

**CONDITION OF LESSEE'S PREMISES.** Lessee shall keep the Premises in a safe and clean condition, and in good order and repair. Lessee shall provide, at Lessee's expense, all water, electricity, gas, sewer, and ventilation to the Premises, and any other utility or service necessary for the installation and operation of the Equipment. Lessor shall not be responsible for damage to the Property caused by the lack or inadequacy of a floor drain in the Premises. Lessee agrees to promptly notify Lessor if any of the Equipment malfunctions or needs repairs. Lessee is responsible for vandalism and/or theft of laundry equipment and/or VTM device, and the costs necessary to repair or replace the rental equipment.

**LESSOR'S OBLIGATIONS.** Lessor will maintain the Equipment in good operating condition during the term of this Rental. Lessor has the right to terminate this Rental Agreement at any time due to excessive service calls on Lessor's rented equipment. Lessor will conduct a service call within 3 business days of request. *Should Lessor fail to response within 3 business days the Lessee has the right to deduct from payment the prorated daily fee of the unit(s) affected until service call has been completed.*

**PAYMENTS.** Lessee shall pay to Lessor the amount listed below on or before the first of the month. Payment shall be made by either credit card or ACH. If Lessee fails to make any payment within seven days of the due date, Lessee shall also pay to Lessor a late charge in the amount of fifty dollars. Payments later than seven days shall also bear interest at the rate of eighteen percent per annum or the highest rate allowed by law, whichever is greater. Payment amount is twenty dollars each per washer and dryer, and forty dollars per VTM device plus appropriate sales tax. Lessee reserves the right to adjust the rental rate by an amount not to exceed six percent (6%) at the beginning of each calendar year during the lease term and any renewals thereof.

**TERM.** At the expiration of the initial Rental term, this Rental shall be automatically renewed for additional ninety-day terms, unless either party gives notice of its intent to terminate this Rental at least sixty (60) days prior to the expiration date of the initial term of this Rental or any renewals. Time is of the essence for the notice of intent to terminate this Rental. At the end of the Rental, Lessee will be allowed to purchase the laundry equipment, at a fair market value as determined by Lessor; provided, however, Lessee shall give written notice to Lessor of its intent to purchase no later than sixty (60) days prior to the end of the lease term.

**SUCCESSORS.** This Rental shall inure to the benefit of, and be binding upon, each party's heirs, successors, and assigns.

**INSURANCE.** Lessor will provide public liability insurance in an amount not less than $1,000,000 against claims for bodily injury or property damage caused by use of the Equipment. Lessee and Lessor hereby release one another and their respective agents, officers, and employees from any and all liability (to the other or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage covered by property insurance or coverable by a customary policy of insurance, even if such loss or damage shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible.

**NOTICES.** All notices required under this Rental shall be in writing and shall be hand delivered or sent by certified mail to the mailing address of the parties specified above. Notices shall be effective upon hand delivery or shall be deemed to have been given three days after the date of such mailing. Lessor may adjust the rental amounts due from Lessee by no more than six percent (6%) per year.

**LESSOR/LESSEE OPTIONS.** If this Equipment Lease is not renewed and Lessee desires to continue making laundry equipment available to its residents by renting laundry equipment or purchasing laundry equipment, Lessee shall have the option to in good faith, seek a commercially reasonable lease, rental agreement, or purchase order for provision of laundry equipment from any third party. For a rental agreement to be "commercially reasonable" shall mean, among other things, a term of sufficient length to enable Lessee to recover any investment in equipment and other costs associated with performing its obligations under the rental agreement, plus reasonable overhead and profit. Lessee shall have the option to match the terms of any such third party offer tendered within 180 days of Lease termination as follows: Lessee shall provide Lessor with an executed copy of any such lease, rental agreement, or purchase order, and Lessor shall have thirty (30) days from the receipt of such executed copy, at its option, to notify Lessee that it will substantially match the terms of such lease, rental agreement, or purchase order in which case a new agreement shall be entered into between Lessor and Lessee on such terms.

**DEFAULT.** The occurrence of any of the following events shall be considered an event of default under this Rental: (a) Lessee's failure to make any payment required by this Rental on the due date thereof, (b) Lessee becoming insolvent or the filing of a bankruptcy petition by or against Lessee, or (c) Lessee's failure to perform any other term or condition of this Rental. In case of a default, Lessor shall provide written notice of the default to Lessee demanding same be cured. Lessee shall have ten (10) days from the date the notice was hand delivered or mailed in order to cure the default; except that Lessor shall have no obligation in this regard if the nature of the default is such that Lessee cannot cure the default. Upon the occurrence of an uncured or incurable event of default, Lessor shall have the right to exercise any one or more of the following remedies: (a) Declare the entire amount of the total unpaid payments for the balance of the initial Rental term and renewal term to be immediately due and payable, (b) without demand or legal process, enter the Property and take possession of and remove the Equipment and Lessee shall allow Lessor to have full access to the Premises to remove the Equipment, (c) terminate this Rental, and/or (d) pursue any other remedy at law or in equity, (e) replace locks and/or card readers necessary to collect machine revenues. Lessee shall be responsible for all attorney's fees and costs incurred by Lessor in enforcing or defending this Rental, whether or not litigation is actually commenced.

**MISCELLANEOUS.** This Rental shall be construed and interpreted in accordance with the laws of the State of Missouri. The venue of any action or proceeding arising out of or relating to this Rental shall be in the District Court, Clay County, Missouri. All of the provisions of this Rental are separable, so if any provision of this Rental is held to be ineffective by a court, the remaining provisions of this Rental shall remain in full force and effect unless the invalidated provision is so fundamental to this Rental that the remaining provisions do not reflect the parties' intent. Notwithstanding any other provision in this Lease, Lessor may, in its sole discretion, with or without cause, terminate this Lease on sixty days' written notice to Lessee. This Rental contains the entire agreement of the parties with respect to the subject matter of this Rental and supersedes any and all prior contracts and understandings between the parties with respect to the same. The terms of this Rental have been cooperatively negotiated by Lessee and Lessor, and this Rental shall not be construed against either party as its author. Time is of the essence for each and every term of this Rental.

EXHIBIT
C

**Rental Commencement Date:** June , 2019

**Expiration of Original Term:** June , 2020

**Rental rate:** $1,150 per month.

**LESSOR:** RJ Kool Company

By: _____
Bill Kimmel, President

Date _____

**LESSEE: Midwestern Baptist Theological Seminary**

By: _____

Name / Title: _____

Date: _____

**Exhibit "A" - Description of Premises**
Various Building on the Midwestern Baptist Theology Campus

**Exhibit "B" - Description of Equipment**

23 Unimac On-Premise Top Load Washers
23 Unimac On-Premise Electric Dryers



TO: Jetz Service CO

FROM: Midwestern Baptist Seminary

Effective this date, July 1, 2019, we are notifying Jetz Service CO that we are cancelling our lease agreement according to the terms of the contract. In addition, your right of first refusal ends July 31, 2020.

Regards

_Garet Holbert_ MBTS Housing Supervisor
Garet Holbert

CERTIFIED MAIL

7015 1520 0002 7303 1807

MBTS
5001 N Oak Trafficway
Kansas City, MO 64118

Jetz Service Co
3737 NE Great Midwest Dr.
Kansas City, MO 64161

64161-931437

**EXHIBIT**

IN THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI
AT LIBERTY

| | | |
|---|---|---|
| JETZ SERVICE CO. INC. | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:19CY-CV11620 |
| | ) | |
| v. | ) | |
| | ) | |
| MIDWEST BAPTIST THEOLOGICAL | ) | |
| SEMINARY | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT
### [Pursuant to Mo. R. Civ. P. 56 and 57]

Plaintiff. Jetz Service Company, Inc.. (hereinafter "Plaintiff" or "Proponent") propounds the following Interrogatories upon Defendant Midwest Baptist Theological Seminary (hereinafter "Defendant" or "Respondent"):

### INSTRUCTIONS AND DEFINITIONS

1.      **Authority.** These Interrogatories are submitted pursuant to Missouri Supreme Court Rules 56 and 57.  Proponent will hold Respondent accountable for abiding by all requirements of these rules.

2.      **Supplemental Answers.** To the extent required by the Missouri Supreme Court Rules. supplemental responses to these Interrogatories are required if Respondent obtains further documents and/or information regarding a matter inquired about in these Interrogatories between the time of its initial responses to these Interrogatories and trial. If Respondent fails to supplement these Interrogatories. Proponent will seek appropriate relief from the Court, up to and including an order excluding documents and/or information from evidence, and/or dismissal of this lawsuit.

3.      **Privilege Claims.** If Respondent refuses or fails to answer all or any part of any Interrogatories on the basis of any claim(s) of a privilege. Respondent should identify the

applicable privilege and prepare a privilege log identifying: (1) the communication or documents to which the privilege applies, (2) the date of the communication, (3) the persons present during the communication, and (4) all facts that Respondent claims supports its assertion that the communication is privileged.

4.    **Objections.**    If an objection is made to any Interrogatories, the reason therefore shall be stated with particularity.

5.    **Personal Identification.**    In each case where Respondent is asked to "identify" a person, Respondent is asked to state, with respect to each such person, the following: (a) name; (b) current business address and telephone number; and (c) current residence address and telephone number, if known.

6.    **Lost or Destroyed Documents.**

If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify such document as completely as possible, providing as much of the following information as possible:

        (a)    the type of document;
        (b)    its date;
        (c)    the date or approximate date it was lost, discarded or destroyed;
        (d)    the circumstances and manner in which it was lost, discarded or destroyed;
        (e)    the reason or reasons for disposing of the document (if discarded or destroyed):
        (f)    the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document;
        (g)    the identity of the person(s) who lost, discarded or destroyed the document; and
        (h)    the identity of all persons having knowledge of its contents.

7.    **Document Identification.**    In each case where Respondent is asked to "identify" a document, Respondent is asked to state, with respect to each such document, the following: (a)

date; (b) author(s); (c) recipient(s); (d) subject matter; (e) custodian(s); and (f) current locations(s), if known.

**8.** **Objections based on Undue Burden or Expense.** In the event that Respondent objects to one or more request on the basis that the request creates an undue burden or expense, then Respondent shall provide the following: (1) a detailed statement under oath outlining what is required in order to obtain the evidence; (2) a detailed statement under oath stating the cost associated with complying with the discovery requests; (3) a detailed statement under oath relating to Respondent's statement of the amount in controversy and (4) a statement under oath detailing the net worth of respondent, all sources of income, all expenses, any applicable insurance policy, the limits of any applicable insurance policy, annual income, all tax filings and any other documents that would allow the court to consider Respondent's resources for the purposes of determining whether the cost of production is, in fact, a burden and what resources Respondent has to comply with Proponent's discovery request.

**9.** **Communication Identification.** In each case where Respondent is asked to "identify a communication" (i.e. meeting, discussion or other verbal communication), Respondent is asked to state, with respect to each such communication, the following: (1) date of the communication; (2) person present for the communication; (3) subject matter of the communication; and (4) identify each and every document that refers to or relates to the communication.

**10.** **Temporal Limitation.** Unless otherwise specifically stated in an Interrogatory, these Interrogatories are limited to the time period from January 1, 2015 to the present date.

**11.** **Definitions.**

    a.    "Describe in full detail," "state in detail," and "identify" mean to fully,

faithfully and accurately state each and every fact, circumstance, act, omission, statement, transaction, event, conduct and/or communication involving, directly or indirectly, in whole or in part, the matter inquired of.

b.   "Document" or "documents" shall mean any and all mediums required to be produced by Missouri Supreme Court Rule 58.01, including originals, file copies, drafts, and notes (whether typed, handwritten or otherwise), e-mails, recordings, metadata, calendars (including electronic calendars), information stored on handheld devices, billing information, phone records, fax records, cell phone records, internet or intranet materials, invoices, bills, meeting notes, meeting minutes and any other correspondence made or prepared in connection with such Documents.

c.   "Plaintiff" as used herein means Plaintiff Jetz Service Company Inc., and any agent, attorney, representative, or any other person operating or working on her behalf.

d.   "Defendant" as used herein means Defendant Midwest Baptist Seminary or any agent, employee, officer, representative, attorney, or other person operating or working on its or their behalf.

e.   "RJ Kool" as used herein means the RJ Kool Company and any agent, attorney, representative or any other person or individual acting on its behalf.

## INTERROGATORIES

1.     Please identify all individuals that Defendant believes may have knowledge or information regarding any claim asserted by Plaintiff or any affirmative defense alleged in this action.  For each such person please provide: (1) his or her name; (2) address; and (3) phone number.

**RESPONSE:**

2.     Please identify any retained, consulting, or other expert whose opinion Defendant intends to offer at trial.  For each such expert please state: (1) the expert's name, address, occupation, place of employment, (2) qualifications to give an opinion, (3) and to state the general nature of the subject matter on which the expert is expected to testify, (4) and the expert's hourly deposition fee.

**RESPONSE:**

3.     Please identify any non-retained expert whose opinion Defendant intends to offer at trial.  For each such expert please state: (1) the expert's name, address and place of employment; (2) a summary of the opinions that the expert intends to offer; (3) the basis for the non-retained expert's testimony; and (4) please identify any and all documents or information that such expert relied upon in reaching his or her opinions or conclusions.

**RESPONSE:**

4.     Please identify all individuals who participated in the decision to terminate the lease agreement with Plaintiff.

**RESPONSE:**

5.    Please identify all individuals from the RJ Kool company with whom Defendant communicated.

**RESPONSE:**

6.    Please identify the date that Defendant decided to accept the six-year lease term offered by the RJ Kool Company.

**RESPONSE:**

7.    Please identify all communications among the Defendant following its decision to accept the six-year lease term offered by RJ Kool Company.

**RESPONSE:**

8.    Please identify all communications with Plaintiff.

**RESPONSE:**

9.    Please identify all communications with the RJ Kool Company.

**RESPONSE:**

10.    Please identify all internal communications that refer or relate to Plaintiff.

**RESPONSE:**

11.    Please identify all internal communications that refer or relate to the RJ Kool Company.

**RESPONSE:**

12.    Please identify whether Garet Halbert had authority to accept a lease agreement with RJ Kool. If Mr. Halbert did not have such authority, please identify what individual or group had such authority.

**RESPONSE:**

13. In the event authority to accept a contract requires a board vote or decision of a group of individuals please identify the date that the board or group voted to approve a six-year lease agreement with RJ Kool.

**RESPONSE:**

**KAPKE & WILLERTH L.L.C.**

By: /s/ George E. Kapke, Jr.
George E. Kapke, Jr.  MO #52114
The Chapel Ridge Law Building
3304 N.E. Ralph Powell Road
Lee's Summit, Missouri 64064
Telephone: 816-461-3800
Facsimile: 816-254-8014
ted@kapkewillerth.com
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The foregoing was served upon Defendant with the Petition. Defendant's responses to the foregoing are due 45 days from the date of service. The Return of Service along with a Certificate of Service reflecting the date of actual service will be filed with the Court.

/s/ George E. Kapke, Jr.
Attorney for Plaintiff

## VERIFICATION

STATE OF _____ )
                         ) ss.
COUNTY OF_____ )

    The below named person, being first duly sworn and on oath, states that after having read the foregoing facts contained in these Responses to Plaintiff's First Set of Interrogatories are true and correct to the best of Defendant's knowledge and belief. The below named Defendant acknowledges that he or she is competent to provide these answers, that such answers are binding upon Defendant and that Defendant's responses to these First Set of Interrogatories are made and subscribed under oath in the same manner as if seated on a witness stand before a jury or judge.

_____
Defendant Midwest Baptist Theological Seminary

    SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 2019.

_____
Notary Public

My Commission Expires:

| | |
|---|---|
| JETZ SERVICE CO. INC. | ) |
| | ) |
| Plaintiff. | ) Case No.:19CY-CV11620 |
| v. | ) |
| | ) |
| MIDWEST BAPTIST THEOLOGICAL | ) |
| SEMINARY | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST REQUESTS FOR
## PRODUCTION OF DOCUMENTS TO DEFENDANT
### [Pursuant to Mo. R. Civ. P. 58.01 *et seq.*]

Plaintiff. Jetz Service Company. Inc., (hereinafter "Plaintiff" or "Proponent") propounds the following Requests for Production of Documents upon Defendant Midwest Baptist Theological Seminary (hereinafter "Defendant" or "Respondent"):

### INSTRUCTIONS AND DEFINITIONS

**1.** **Authority.** These requests are submitted pursuant to Missouri Supreme Court Rules 56 and 58. Proponent will hold Respondent accountable for abiding by all requirements of these rules.

**2.** **Supplemental Answers.** To the extent required by the Missouri Supreme Court Rules. supplemental responses to these Requests are required if Respondent obtains further documents and/or information regarding a matter inquired about in these Requests between the time of its initial responses to these Requests are served and trial. If Respondent fails to supplement these Requests. Proponent will seek appropriate relief from the Court. up to and including an order excluding documents and/or information from evidence. and/or dismissal of this lawsuit.

3. **Privilege Claims.** If Respondent refuses or fails to answer all or any part of any Request on the basis of any claim(s) of a privilege, Respondent should identify the applicable privilege and prepare a privilege log identifying: (1) the communication or documents to which the privilege applies. (2) the date of the communication. (3) the persons present during the communication. and (4) all facts that Respondent claims supports its assertion that the communication is privileged.

4. **Objections.** If an objection is made to any Request. the reason therefore shall be stated with particularity.

5. **Personal Identification.** In each case where Respondent is asked to "identify" a person. Respondent is asked to state. with respect to each such person. the following: (a) name: (b) current business address and telephone number: and (c) current residence address and telephone number. if known.

6. **Lost or Destroyed Documents.**

If any document requested herein was at one time in existence. but has been lost. discarded or destroyed. identify such document as completely as possible. providing as much of the following information as possible:

(a) the type of document:
(b) its date;
(c) the date or approximate date it was lost. discarded or destroyed;
(d) the circumstances and manner in which it was lost, discarded or destroyed:
(e) the reason or reasons for disposing of the document (if discarded or destroyed):
(f) the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the document:
(g) the identity of the person(s) who lost. discarded or destroyed the document: and
(h) the identity of all persons having knowledge of its contents.

7. **Document Identification.** In each case where Respondent is asked to "identify" a document. Respondent is asked to either produce said document or state. with respect to each such

document, the following: (a) date; (b) author(s); (c) recipient(s); (d) subject matter; (e) custodian(s); and (f) current locations(s), if known.

**8.** **Communication Identification.** In each case where Respondent is asked to "identify a communication" (i.e. meeting, discussion or other verbal communication), Respondent is asked to state, with respect to each such communication, the following: (1) date of the communication; (2) person present for the communication; (3) subject matter of the communication; and (4) identify each and every document that refers to or relates to the communication.

**9.** **Objections based on Undue Burden or Expense.** In the event that Respondent objects to one or more request on the basis that the request creates an undue burden or expense, then Respondent shall provide the following: (1) a detailed statement under oath outlining what is required in order to obtain the evidence; (2) a detailed statement under oath stating the cost associated with complying with the discovery requests; (3) a detailed statement under oath relating to Respondent's statement of the amount in controversy and (4) a statement under oath detailing the net worth of respondent, all sources of income, all expenses, any applicable insurance policy, the limits of any applicable insurance policy, annual income, all tax filings and any other documents that would allow the court to consider Respondent's resources for the purposes of determining whether the cost of production is, in fact, a burden and what resources Respondent has to comply with Proponent's discovery request.

**10.** **Temporal Limitation.** Unless otherwise specifically stated in a Request, these requests are limited to the time period from January 1, 2015 to the present date.

**11.** **Definitions.**

    a.    "Describe in full detail," "state in detail," and "identify" mean to fully,

3

faithfully and accurately state each and every fact, circumstance, act, omission, statement, transaction, event, conduct and/or communication involving, directly or indirectly, in whole or in part, the matter inquired of.

b. "Document" or "documents" shall mean any and all mediums required to be produced by Missouri Supreme Court Rule 58.01, including originals, file copies, drafts, and notes (whether typed, handwritten or otherwise), e-mails, recordings, metadata, calendars (including electronic calendars), information stored on handheld devices, billing information, phone records, fax records, cell phone records, internet or intranet materials, invoices, bills, meeting notes, meeting minutes and any other correspondence made or prepared in connection with such Documents. Document shall also include any electronically stored information in any form.

c. "Plaintiff" as used herein means Plaintiff Jetz Service Company Inc., and any agent, attorney, representative, or any other person operating or working on her behalf.

d. "Defendant" as used herein means Defendant Midwest Baptist Seminary or any agent, employee, officer, representative, attorney, or other person operating or working on its or their behalf.

e. "RJ Kool" as used herein means the RJ Kool Company and any agent, attorney, representative or any other person or individual acting on its behalf.

## REQUESTS

1.    Please produce all communications between Plaintiff and Defendant.

**RESPONSE**:

2.    Please produce all communications between Defendant and RJ Kool Company.

**RESPONSE**:

3.    Please produce all communications among employees or agents of Defendant that reference or relate to Plaintiff.

**RESPONSE**:

4.    Please produce all communications among employees or agents of Defendant that reference or related to Plaintiff.

**RESPONSE**:

5.    Please search the PST/OST file of Garet Halbert GHalbert@mbts.edu for the following terms: "Jetz" "Kool" "Laundry" "lease" "Kimmel" bkimmel@rjkool.com "rjkool.com"

**RESPONSE**:

6.    Please produce all documents reflecting any complaint, concern, defect, issue or other problem associated with the services provided by Plaintiff.

**RESPONSE**:

7.    Please produce all documents reflecting any complaint, concern, defect, issue or other problem associated with the services provided by Plaintiff that Defendant actually provided to Plaintiff.

**RESPONSE**:

8. Please produce all documents, opinions, reports and communications provided to or received from any expert, whether retained or non-retained, that you anticipate calling as a witness at trial.

**RESPONSE:**

9. Please produce all email correspondence between or among employees of Defendant that refer or relate to Plaintiff's contract performance.

**RESPONSE:**

10. Please produce all notes taken by Defendant or its employees during any meeting with Plaintiff.

**RESPONSE:**

11. Please produce all notes taken by Defendant during any meeting regarding Plaintiff.

**RESPONSE:**

12. Please produce all notes taken by Defendant in any way related to Plaintiff.

**RESPONSE:**

13. Please produce any documents reflecting the reason for Defendant's termination of the Lease Agreement with Plaintiff.

**RESPONSE:**

14. Please produce all documents that reflect Defendant's willingness to accept a six year lease agreement with RJ Kool.

**RESPONSE:**

15. Please produce all communications between Defendant and RJ Kool that refer or relate to the change in lease terms from six years to one year.

**RESPONSE:**

16.     Please produce any calendar entries of any of Defendant's employees, agents, and officers, regarding Plaintiff, including meetings where Plaintiff was discussed and meetings with Plaintiff.

**RESPONSE**:

17.     Please produce any and all text messages between Defendant and representatives of RJ Kool.

**RESPONSE**:

18.     Please produce all documents that reflect or references the decision to reduce the lease term with RJ Kool from six year to one year.

**REPONSE**:

19.     Please produce any documents provided to Defendant by the RJ Kool Company.

**RESPONSE**:

20.     Please produce any meeting minutes wherein Defendant voted to approve a six-year lease agreement with RJ Kool or delegated authority to Garet Halbert to accept a six-year lease agreement with RJ Kool.

**RESPONSE**:

21.     Please produce any bylaws, policies, procedures, books of discipline or guidelines that detail the procedure for approving a lease like the six-year lease agreement proposed by RJ Kool.

**RESPONSE**:

22.    Please produce any photographs of Plaintiff's equipment, the Lease Premise, the RJ Kool equipment that has been placed within Defendant's facility and any other photo that Defendant intends to offer or rely upon as evidence in this case.

RESPONSE:

KAPKE & WILLERTH L.L.C.

By: /s/ George E. Kapke, Jr.
George E. Kapke, Jr.   MO #52114
The Chapel Ridge Law Building
3304 N.E. Ralph Powell Road
Lee's Summit, Missouri 64064
Telephone: 816-461-3800
Facsimile: 816-254-8014
ted@kapkewillerth.com
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The foregoing was served upon Defendant with the Petition. Defendant's responses to the foregoing are due 45 days from the date of service. The Return of Service along with a Certificate of Service reflecting the date of actual service will be filed with the Court.

/s/ George E. Kapke, Jr.
Attorney for Plaintiff

8